UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, | ) |
| Plaintiff, | ) ) ) |
| v. | ) 1:16-cr-00001-TWP-TAB-2 ) |
| DAMION MCKISSICK, | ) ) ) |
| Defendant. | ) |

**DEFENDANT MCKISSICK'S MOTION OBJECTING TO GOVERNMENT USE OF F.R.E. 404 INFORMATION**

Comes now, defendant Damion McKissick, by counsel, Gwendolyn M. Beitz, respectfully moves the Court to exclude the use of the Government's proffered Federal Rule of Evidence (F.R.E.) 404(b) evidence and in support states:

1. The Government filed Notice of Intent to Use Evidence under F.R.E. 404 of four facts relating to Mr. McKissick (1) that Mr. McKissick was on probation and under supervision; (2) the fact that the getaway cars were stolen; (3) the circumstances of Mr. McKissick's traffic stop on November 20, 2015, and (4) that Mr. McKissick was in violation of his conditions of supervised release by being outside of the Northern District of Indiana without permission. The Government argues the non-propensity reason for the presentation of the proffered evidence is "identity."  Each fact will be addressed below.

2. **Mr. McKissick's Status on Supervised Release and Relationship to a Probation Officer:**  While the evidence of Mr. McKissick's legitimate employment status and cell phone number may be relevant information under F.R.E. 401, the Defense does not agree to the relevance of the facts that Mr. McKissick had a probation officer and was on supervised release.   Instead, it appears that the Government is

attempting to utilize a highly prejudicial means of presenting the relevant evidence by strapping it with propensity information.   In *United States v Gomez*, the Seventh Circuit set forth that the district court "should not just ask whether the proposed other-act evidence is relevant to a non-propensity purpose but how exactly the evidence is relevant to that purpose – or more specifically, how the evidence is relevant without relying on a propensity inference."   *United States v Gomez*, 763 F.3d 845, 856 (7th Cir. 2014).   As cited by the Government in *Gomez*, the district court must then assess whether the probative value of the other-act evidence is substantially outweighed by the risk of unfair prejudice and exclude the evidence under Rule 403 if the risk is too great. "The court's Rule 403 balancing should take account of the extent to which the non-propensity fact for which the evidence is offered actually is at issue in the case." *Gomez*, 763 F.3d at 860 (7th Cir. 2014).   As argued by the Government in their notice, the non-propensity issue is Mr. McKissick's employment status and cellphone number. The manner in which it is presented must still pass a F.R.E. 403 balancing test. Informing the jury that Mr. McKissick is on federal supervised release and has a probation officer as a means to present the non-propensity evidence runs the real risk of leading the jury to believe Mr. McKissick is a bad person.   When a jury believes a defendant is a bad person they are "not likely to insist on the government's satisfying so demanding a standard of proof" as beyond a reasonable doubt "if the defendant is a thoroughly bad sort who even if not clearly guilty of the crime with which he is charged is no doubt guilty of some similar crimes for which he may never have been caught or, if caught, may not have been punished adequately."   *United States v Wright*, 901 F.2d 68, 70 (7th Cir. 1990)(citing *Michelson v United States*, 335 U.S. 469, 475-76(1948)).

    3.   The Defense believes the Government's factual information can be

presented fairly and with less prejudice by allowing the witness to testify and identify as a "professional associate" or "associate" of Mr. McKissick. In fact the word "associate" is the exact one used by the Government earlier in their brief to describe Mr. McKissick's wife. (Docket 79, page 4)   If the word is sufficient to describe an intimate familial relationship such as marriage it is certainly sufficient to adequately describe the relationship between a probation officer and client.   Much like in *Old Chief v United States*, 519 U.S. 172, 180 (1997), this Court has an alternative before it that will allow the Government to present their evidence, indeed their proffered facts, with the same probative value, while lowering the danger of unfair prejudice adhering to the requirements of F.R.E. 403.   It should be noted that the Defense understands this will severely limit cross-examination of the probation officer's statements, and would require the Defense to "tread carefully" as to not ask questions which might challenge the officer's credentials or the basis of the knowledge of the officer's answers.

    4.   The same argument follows for the need for the probation officer to testify to link Mr. McKissick to the cell phone number.   The Government argues that the cell phone records will allow them to link Mr. McKissick and co-defendants to "control of cell phones from which location data puts them at the scene of multiple overt acts."   Having had the opportunity to meet with the Government and FBI regarding this cell phone location data, it has become clear that the cell phone evidence does not place Mr. McKissick at locations of multiple overt acts.   The cell phone pings demonstrate that Mr. McKissick's phone pinged within a certain number of miles of cell phone towers within times around/on the days of the charged events.   It does not pinpoint his location.   The Government is entitled to argue the weight of this evidence as they see fit, however, necessitating a probation officer to testify that Mr. McKissick was on

probation or not permitted to be in the district and was therefore in violation of terms of his supervised release serves no relevant purpose aside from making the jury draw the conclusion that Mr. McKissick is a bad person, who must have been acting in character that day and doing as the Government suggests; committing the charged offense. If the stated purpose is to link Mr. McKissick to a certain cell phone number, having the probation officer testify as a "professional associate" or "associate" and identify the phone number serves the purpose and adheres to F.R.E. 403.   There is no relevant purpose for the admissions of Mr. McKissick's violation or his conditions of supervision by being in the Southern District of Indiana.

    5.   **The fact that the getaway cars were stolen**:   The Defense does not object to this evidence being presented.

    6.   **Mr. McKissick's Traffic Stop on November 20, 2015**:   Mr. McKissick was involved in a traffic stop on November 20, 2015.   According to Deputy Robert Hollo's Report, Mr. McKissick was stopped for going 50 mph in a 35 mph speed limit zone.   He asked Mr. McKissick and his passenger, Mr. KB, to exit the vehicle. Mr. KB did not have identification and Mr. McKissick's license was in a status of "suspended-prior".   The report also includes a statement that the interior of the vehicle smelled of burnt marijuana.   The officer stated that he observed Mr. McKissick to have "several thousands of dollars in his front right pocket of his jeans."   The officer made contact with "FBI agents in reference to another investigation with McKissick and they informed" the officer "to place the US currency into continuity for an FBI hold."   The money was counted in front of Mr. McKissick and he was told that he would need to "make contact with the Gang Unit reference the money at a later date."   Mr. McKissick was also told he would need to provide proof of the receipt for the money.   Mr. McKissick was cited

for a Court appearance on November 23, 2015, and was released from the scene. From the report, it appears no search was done of the interior of the car or trunk, (despite the mention of the smell of marijuana) and the only item seized was the money from Mr. McKissick's person.   This money was seized as a result of a warrantless search and therefore not admissible.   Once the defense raises a challenge to a warrantless search, the government bears the burden of establishing legality.   *United States v Rosselli*, 506 F.2d 627, 629 (7th Cir. 1974).   Immediately upon sight, the officer knew what was in Mr. McKissick's pocket was "several thousands of dollars", not a weapon, not a gun.   From the report, it appears a safety sweep was not done.   No arrest was conducted.   Mr. McKissick was never placed in handcuffs.   Mr. McKissick left the scene by driving the car away from the scene in front of the officer.   Before the Court can consider whether this evidence should be admissible under F.R.E. 404(b), it must first determine whether it is admissible at all.   The Defense believes it is not.

**WHEREFORE**, for the above stated reasons, Defendant Damion McKissick, through undersigned counsel, submits the following objection to the Government's intent to present the above F.R.E. 404(b) information.

Dated:   January 4, 2017

*S/Gwendolyn Beitz*
Gwendolyn Beitz
Indiana Federal Community Defenders, Inc.
111 Monument Circle, Ste. 3200
Indianapolis, IN 46204
(317) 383-3520
Attorney for Defendant

**S/Joseph Cleary**
Indiana Federal Community Defenders, Inc.
111 Monument Circle, Ste. 3200
Indianapolis, IN 46204
(317) 383-3520
Attorney for Defendant

## CERTIFICATE OF SERVICE

I certify a copy of the foregoing was filed electronically.   Notice of this filing will be sent to the parties by operation of the Court's electronic filing system.  Parties may access this filing through the Court's system.

*S/ Gwendolyn Beitz*
Gwendolyn Beitz